UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

       Plaintiff,                        CASE NO. 06-20325

       v.                                DISTRICT JUDGE VICTORIA A. ROBERTS

RODNEY GEORGE DAVIS           MAGISTRATE JUDGE VIRGINIA M. MORGAN

       Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

On June 14, 2006, defendant Rodney George Davis was indicted on a charge of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1).  The matter comes before the court on defendant's motion to suppress, in which defendant claims that the firearm was seized pursuant to an invalid search warrant.  The district court referred the motion to this court pursuant to 28 U.S.C. § 636(b)(1)(B) for preparation of a Report and Recommendation.  The court heard oral argument on the motion on October 25, 2006.  For the reasons set forth below, the court finds that although the affidavit failed to establish probable cause to search the identified premises, it was not so lacking in indicia of probable cause so as to prevent application of the good faith exception.  Therefore, the court  recommends that the motion be denied.

**II.  Background**

In 2005, Edward Dosch, a Special Agent with the Drug Enforcement Administration, received information from two confidential informants (CIs) that defendant and an associate, Michael Cathey, were involved in a large-scale marijuana and cocaine trafficking operation. Agent Dosch commenced an investigation into the activities of defendant, Cathey, and other individuals involved in the operation.  On April 26, 2006, having received information that defendant resided at 18196 Goldwin Street, Southfield, Michigan, Agent Dosch obtained a warrant to conduct a search at that address for weapons, currency, and other indicia of drug trafficking activities.

DEA agents executed the warrant on May 2, 2006.  They recovered a Llama X45 pistol and a box of .45 caliber ammunition from a dresser drawer in the master bedroom of the home. Later that day, defendant was charged by complaint with being a felon in possession of a firearm. As indicated above, a grand jury subsequently returned an indictment charging him with the same offense.

Defendant moves to have the weapon suppressed, claiming that the agents lacked probable cause to search 18196 Goldwin Street.  The government contends that the affidavit on which the search was based contained sufficient information to give rise to probable cause.  In the alternative, the government argues that even if the warrant was issued in error, the agents relied upon it in good faith and, therefore, that the seizure of the weapon is subject to the good-faith exception to the exclusionary rule, as established in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

### III.  Discussion

#### A.  Probable Cause

The Fourth Amendment to the United States Constitution provides that "no warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  In order to obtain a search warrant, law enforcement officers must present to a magistrate judge or other duly authorized judicial officer information sufficient for that officer to determine, from the totality of the circumstances, that "there is a fair probability that contraband or other evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527(1983); see also United States v. Coffee, 434 F.3d 887, 892 (6th Cir. 2006).  Under the totality-of-the-circumstances test, the magistrate judge must make a "practical, common-sense" determination as to whether the evidence presented is sufficient to establish probable cause.  Gates, 462 U.S. at 239,103 S.Ct. 2317, 76 L.Ed.2d 527.  A magistrate judge's probable cause determination is entitled to substantial deference.  Coffee, 434 F.3d at 892.  "Thus, 'an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised.'"  Id. (quoting United States v. Allen, 211 F.3d 970, 973 (6th Cir. 2000).  Review of a probable cause determination "is limited to the information presented in the four corners of the affidavit."  Coffee, 434 F.3d at 892.

To justify the issuance of a search warrant, the information contained in the affidavit must demonstrate the existence of a nexus between the place to be searched and the alleged illegal activity.  United States v. Carpenter, 360 F.3d 591, 594-96 (6th Cir. 2004); United States

v. Van Shutters, 163 F.3d 331, 336-37 (6th Cir. 1998).  The affidavit presented by Agent Dosch contains no information regarding any illegal activity at 18196 Goldwin Street.  None of the CIs who provided information to Agent Dosch reported seeing drugs being sold or stored at the Goldwin Street address, nor did they report seeing any other indicia of drug trafficking at the house.  Indeed, there is nothing in the affidavit indicating that any of the CIs had ever been to that address.  Likewise, there is nothing indicating that Agent Dosch or any other law enforcement official witnessed any illegal activity at the Goldwin Street address.

       The government argues, however, that evidence of illegal activity at 18196 Goldwin Street was not necessary to the issuance of a search warrant under the circumstances.  Rather, the government contends that the affidavit contained information showing that defendant was involved in drug trafficking and that he resided at 18196 Goldwin Street, and that such information was sufficient, standing alone, to warrant a search of the address.  In support of its argument, the government cites U.S. v. Goward, 2006 WL 1952282 (6th Cir. 2006), and United States v. Miggins, 302 F.3d 384, 394 (6th Cir. 2002).  In Goward, the police learned through information provided by an informant that the defendant and others were involved in a marijuana smuggling operation.  The police obtained warrants to search various locations, including the defendant's residence.  A search of the residence yielded 13 pounds of marijuana, as well as several firearms and a substantial amount of cash.  The defendant was subsequently indicted on drug trafficking and weapons charges.  He filed a motion to suppress the evidence seized in the search of his home, arguing, among other things, that the information contained in the search warrant affidavit failed to create a nexus between his residence and the illegal activity described

in the affidavit. The district court denied the motion, and the defendant was subsequently found guilty by a jury of drug trafficking and other offenses. On appeal, the Sixth Circuit framed the issue in the following terms:

> The question before this court is whether an affidavit containing credible, verified allegations of drug trafficking, verification that said defendant lives at a particular residence, combined with the affiant-officer's experience that drug dealers keep evidence of dealing at their residence, establishes probable cause for the issuance of a warrant to search that residence.

Goward, 2006 WL 1952282, at *3. The Court, citing Miggins and like cases from other Circuits, answered the question in the affirmative: "We...side with our sister Circuits in believing that it is a reasonable inference that 'in the case of drug dealers, evidence is likely to be found where drug dealers reside.'" Id. (quoting United States v. Frazier, 423 F.3d 526, 537 (6th Cir. 2005)); see also United States v. Sparks, 291 F.3d 683 (10th Cir. 2002); United States v. Hodge, 246 F.3d 301 (3d Cir. 2001); United States v. Restrepo, 994 F.2d 173 (5th Cir. 1993). The Court affirmed the denial of the defendant's motion to suppress, concluding that the search of the defendant's residence was proper because the affidavit contained sufficient information to establish both that the defendant had committed a drug trafficking offense and that he lived at the searched address.

Unlike in Goward, the affidavit in this matter, viewed as a whole, lacks both "verified allegations of drug trafficking" and "verification" that defendant actually resided at the Goldwin Street address. Goward, 2006 WL 1952282, at *3. With regard to the former, the affidavit contains information regarding defendant's criminal record, his associations, and his past drug trafficking activities, but contains no information, let alone verified information, that defendant

was actively engaged in drug trafficking activities at or near the time the warrant was secured. The affidavit indicates that two informants, identified in the affidavit as DEA-1 and DEA-2, began providing information in 2005 regarding the drug trafficking activities of defendant and his associates, including Cathey.  Both informants advised that defendant and Cathey were partners in an ongoing trafficking operation involving the purchase, storage, and distribution of large quantities of marijuana and cocaine in Detroit, Kentucky, Ohio, and Georgia.  However, the affidavit lacks information regarding the basis of the knowledge possessed by DEA-1 and DEA-2 and lacks specifics regarding their knowledge of the extent and nature of the operation. A third informant, DEA-3, indicated in April, 2006, that defendant had a drug storage location in Cincinnati, Ohio, and that he distributed marijuana in Kentucky.  However, as with DEA-1 and DEA-2, no detail is provided regarding the nature of defendant's activities, and the basis of DEA-3's knowledge is not set forth in the affidavit.  Moreover, there is no indication in the affidavit that any of these CIs witnessed defendant engaging in any drug trafficking activities at or near the time the search warrant was issued.  In fact, of the three CIs, only DEA-2 actually witnessed defendant engaged in any such activities at any time, and his information appears to be stale. In paragraph 11 of the affidavit, Agent Dosch states the following: "DEA-2 stated that, he (DEA-2) has observed Cathey and Davis package marijuana and cocaine on many occasions at [20180 Cooley Street, Detroit, Michigan].  DEA-2 advised that as recently as July 2005, he (DEA-2) observed multiple kilograms of cocaine inside the Cooley street residence."[1]  That is

---

[1] Agent Dosch stated in the affidavit that a property record check revealed that defendant owned the Cooley Street residence.

the lone reference in the affidavit to any specific instances of illegal activity involving defendant and there are no instances noted at the premises to be searched. The remainder of the affidavit contains information about arrests and illegal activity involving Cathey, defendant's brother, and other associates of defendant, and general statements offered by the informants that defendant was or had been involved in drug trafficking with Cathey for many years. No controlled buys or deliveries were executed, and no agent or informant witnessed any illegal activity by defendant at or near the time of the issuance of the warrant. The affidavit offered much smoke, but no actual fire.

Even if the affidavit contained more specific information regarding defendant's activities, it lacks sufficient information to create a nexus between those activities and 18196 Goldwin Street. As indicated in the affidavit, DEA-2 informed Agent Dosch that defendant lived on Goldwin Street in Southfield, Michigan, and that defendant drove a Corvette, a Dodge Charger, and a Chevrolet pickup. Agent Dosch stated that he and other agents conducted surveillance and observed vehicles matching the description provided by DEA-2 at 18196 Goldwin at "various times" over the course of "the past several weeks." It does not identify those vehicles as belonging to defendant. A search of property records revealed that the title owner of the property was an individual named Bridget Huddleston. Another informant, DEA-3, informed Agent Dosch that defendant's girlfriend was named Bridget, that she had no known source of legitimate income, and that defendant had provided the funds used to purchase the house.

In the court's view, these facts fall short of constituting verification that defendant actually resided at 18196 Godwin Street at time the warrant was issued. The basis of DEA-3's

knowledge regarding defendant's connection to the property is not set forth in the affidavit and, in any event, the fact that he might have furnished the funds for the purchase of the home at some unspecified time does not mean that defendant resided there when the warrant was issued. Only DEA-2 specifically stated that 18196 Goldwin Street was defendant's residence, and the affidavit lacks any information regarding the basis of DEA-2's knowledge. Further, no time frame is given for the information provided by DEA-2. The affidavit merely states that "[r]ecently, DEA-2 advised your affiant that [defendant] lived on Goldwin Street in Southfield, Michigan."[2] Moreover, DEA-2's tip regarding defendant's residence was corroborated only to the slightest degree. Agents conducted surveillance at 18196 Goldwin Street, but no agent appears to have personally observed defendant at the Goldwin Street address. Rather, they merely observed vehicles defendant purportedly drove parked at 18196 Goldwin Street. In addition, Agent Dosch provided no specific information as to when this surveillance occurred, stating only that the vehicles were observed "at various times" over the course of "the past several weeks." In sum, the affidavit lacks information showing that defendant actually resided at 18196 Goldwin Street at the time the warrant was issued.

For the reasons discussed above, the court concludes that the affidavit fails to establish probable cause to search 18196 Goldwin. It contains only vague references to defendant's drug trafficking activities, it lacks specific information indicating that defendant was actively engaged in drug trafficking activities at or near the time the warrant was issued, and it lacks sufficient

---

[2] It is not clear whether this means "currently residing" or had resided there at some time in the past.

averments to establish that defendant actually resided at 18196 Goldwin at that time. The court finds that it lacks both "verified allegations of drug trafficking" and "verification that said defendant lives at a particular residence," and is thus insufficient under the rule stated in Goward to give rise to probable cause to search the Goldwin Street address in the absence of evidence indicating that any illegal activity had occurred there. Goward, 2006 WL 1952282, at *3.

### B.  Leon Good Faith Exception

The government contends that even if probable cause was lacking, the good-faith exception to the exclusionary rule is applicable and, therefore, that suppression of the seized weapon is not warranted.

The exclusionary rule generally precludes the use in a criminal proceeding of evidence obtained in violation of the Fourth Amendment. Illinois v. Krull, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). However, in Leon, supra, 468 U.S. 897, 922, 104 S.Ct. 3405, the Supreme Court held that the exclusionary rule did not apply to "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." The Court reasoned that the exclusionary rule was formulated to deter Fourth Amendment violations and that "the deterrence rationale loses much of its force" when officers have relied in good faith upon a warrant. Leon, 468 U.S. at 919, 104 S.Ct. 3405 (citation omitted). In Leon, the Court also identified four situations in which the good-faith exception would not apply:

> (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable

>cause that a belief in its existence is objectively unreasonable; and
>(4) when the warrant is so facially deficient that it cannot be
>presumed to be valid.

United States v. Laughton, 409 F.3d 744, 748 (6th Cir. 2005).

Defendant does not allege that the affidavit contains false information or that the issuing magistrate abandoned her neutral and detached role, and the warrant is not so facially deficient as to render belief in its validity objectively unreasonable. Rather, the court will focus its inquiry on whether the "affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable." Laughton, 409 F.3d at 748. Affidavits falling within this category, generally referred to as "bare bones" affidavits, "contain[] only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge ....'" Id. (quoting United States v. Weaver, 99 F.3d 1372, 1378 (6th Cir. 1996)).

Agent Dosch's affidavit cannot be deemed a bare bones affidavit. It is not entirely devoid of information regarding defendant's drug trafficking activities, nor is it wholly lacking information linking him to the searched address. All three CIs, whom, according to Agent Dosch, had provided accurate and reliable information on prior occasions leading to arrests and seizures of weapons, drugs, and currency, indicated that defendant and Cathey had been involved in drug trafficking activities together for many years. Further, though the affidavit is certainly not rich in detail regarding the trafficking activities of defendant and Cathey, the informants provided some detail regarding their operation. DEA-1 advised that Cathey obtained substantial quantities of marijuana on a monthly basis from a Kentucky supplier and distributed it in Detroit,

that defendant had a cocaine source in Georgia and distributed the cocaine in Ohio, and that they used rental vehicles to transport the drugs to these locations.  DEA-3 stated that defendant had a drug storage location in Cincinnati and that he distributed marijuana in Kentucky.  Both DEA-1 and DEA-2 advised that defendant and Cathey conducted drug trafficking activities at 20180 Cooley Street in Detroit, a residence owned by defendant.  DEA-2 indicated that he had observed Cathey and defendant packaging cocaine and marijuana at that address on several occasions, most recently in July 2005.  Agent Dosch further indicated in the affidavit that surveillance was conducted at 20180 Cooley Street on March 21, 2006.  Agents observed a rental vehicle in the driveway that had been rented by Hassan Malik Green, an individual with an extensive criminal history, including two prior drug convictions, who was known to the DEA as a multiple kilogram cocaine trafficker in Indiana and Illinois, and who was identified by DEA-1 as a "drug associate" of defendant.  Also, agents searched the Cooley Street address pursuant to a warrant and found drug ledgers in the bedroom of another associate of defendant and Cathey, as well as a luggage tag bearing the Crystal City, Texas, address of individual known to the DEA as a marijuana and cocaine trafficker.  The affidavit also sets forth the criminal histories of both Cathey and defendant.  Cathey has two prior convictions, including a felony drug conviction.  Defendant has three prior convictions, including a drug conviction, and was arrested on November 9, 2004, in Cincinnati, Ohio, for felony possession of drugs.  In addition, Cathey was arrested in Cincinnati, Ohio on July 26, 2005.  He had a small quantity of marijuana in his pocket, and a subsequent search of the vehicle he was riding in revealed approximately 105 pounds of marijuana.  Cathey's home in Oak Park, Michigan, was searched three days later.

Officers recovered a small quantity of marijuana, money ledgers, a money counter, four firearms, and in excess of $50,000 in U.S. currency.  The informants also indicated that both Cathey and defendant had no known source of legitimate income.  In sum, though the affidavit lacks specific, independently corroborated information indicating that defendant was actively engaged in drug trafficking at or near the time the warrant was issued, a reasonable officer could conclude from the information contained in the affidavit, as described above, that he had been, and continued to be, a participant in an ongoing and extensive marijuana and cocaine trafficking operation.

Further, the affidavit contains some information linking defendant to 18196 Goldwin Street.  DEA-2 advised that defendant "lived" at that address, and DEA-3 advised that defendant had provided the funds used to purchase the residence.  DEA-3 further advised that defendant's girlfriend was named Bridget, and a search of property records indicated that the title owner of 18196 Goldwin Street was an individual named Bridget Huddleston.  In addition, agents conducting surveillance at 18196 Goldwin Street observed vehicles associated with defendant at the house at various times over the course of several weeks.  Thus, they corroborated the information provided by DEA-2 and DEA-3 at least to some extent.  Agent Dosch also stated in the affidavit that in his experience and training, drugs, weapons, money, and other indicia of drug trafficking could typically found at the residence of a drug trafficker.  From this information, an officer might reasonably conclude that a sufficient nexus existed between defendant's drug trafficking activities and 18196 Goldwin Street to warrant a search of that residence.

For the reasons discussed above, the court concludes that the warrant was invalid, but that the agents' reliance thereon in conducting a search of 18196 Goldwin Street was objectively reasonable.  As set forth in the affidavit, the agents conducted an extensive investigation, obtained information from reliable confidential informants that defendant was a long-time participant in a large scale drug trafficking operation, obtained information tying defendant to the Goldwin Street address, and partially corroborated the information provided by the informants.  The affidavit, while lacking in the type of specific, corroborated information that might ordinarily be desired, is not "so lacking in indicia of probable cause" as to preclude application of the Leon good faith exception.

**IV.  Conclusion**

For the reasons stated above, the court recommends that defendant's motion to suppress be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan<br>United States Magistrate Judge

Dated:   November 9, 2006

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record via the Court's ECF System and/or U. S. Mail on November 9, 2006.

s/Kendra Byrd<br>Case Manager to<br>Magistrate Judge Virginia M. Morgan